# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# DELTA DIVISION

**FELICIA WELLS,**      **PETITIONER**

**V.**      **NO. 2:02CR12-D**

**UNITED STATES OF AMERICA,**      **RESPONDENT**

## O P I N I O N

This matter is before the court, *sua sponte*, for consideration of dismissal. Petitioner, an inmate currently incarcerated at the Federal Medical Center in Fort Worth, Texas, files this action pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct her sentence.

## BACKGROUND

Felicia Wells was arrested on a criminal complaint December 18, 2001. William Travis was appointed as counsel, and petitioner was released on 10% secured bond. She was initially indicted January 10, 2002, and a superseding indictment was filed February 28, 2002. The six count indictment charged her with conspiring to distribute in excess of 50 grams of cocaine base between November 26 and December 18, 2001, in violation of 21 U.S.C. § 841(a)(1) & (b)(1)(A) and § 846, and four instances of distributing in excess of 5 grams to in excess of 50 grams, and possession with intent to distribute in excess of 50 grams, on December 18, in violation of 21 U.S.C. §§ 841(a) & (b)(1)(A) or (b)(1)(B). Retained counsel, Azki Shah, appeared for Ms. Wells and appointed counsel withdrew.

On April 15, 2002, a plea agreement with the Government, signed by Ms. Wells and her counsel, was filed with the court. The agreement provided that the defendant would plead guilty to count six that charged possession of in excess of 50 grams of cocaine base with intent to distribute on December 18, 2001, which, as the plea agreement stated, "carries maximum possible penalties of not less than 10 years and not more than life imprisonment." The Government agreed to dismiss the other counts. The defendant also agreed to cooperate with the Government in the investigation of other persons involved in criminal activity, and the Government agreed that if her cooperation

qualified as substantial assistance in the judgment of the U. S. Attorney under the sentencing guidelines, consideration would be given to filing an appropriate motion for a sentence reduction.

The plea agreement expressly provided that "there is no agreement as to the sentence to be imposed, which will be in the sole discretion of the Court subject to the Federal Sentencing Guidelines, which have been explained to defendant by her attorney." Further: "Apart from being advised of the applicability of the U. S. Sentencing Guidelines, no promises or representation whatsoever has been made to defendant as to what punishment the Court might impose if it accepts the plea(s) of guilty."

The plea agreement also included the following provision:

> 6. **WAIVER OF ALL APPEALS AND COLLATERAL ATTACKS**. Defendant FELICIA A. WELLS, a/k/a Felecia Thompson, **hereby expressly waives her rights to** appeal the conviction and/or sentence imposed in this case, and the manner in which sentence was imposed, on any ground whatsoever, including but not limited to the grounds set forth in 18 U.S.C. § 3742. Defendant FELICIA A. WELLS, a/k/a Felecia Thompson, also hereby expressly waives all rights to contest or collaterally attack the conviction and/or sentence, and the manner in which sentence was imposed, in any post-conviction proceeding, including but not limited to a motion brought pursuant to 28 U.S.C. § 2255. Defendant FELICIA A. WELLS, a/k/a Felecia Thompson, waives these rights in exchange for the concessions and recommendations made by the United States in this plea agreement.

Pursuant to the plea agreement, the defendant appeared with her counsel before the court April 17, 2002, to tender a guilty plea to count six. The court advised and questioned her regarding the essentials of a valid guilty plea and she affirmed under oath that she knew and understood that:

Her untruthful answers were subject to the penalties of perjury.

She had the right to a trial at which the Government would be required to prove her guilty beyond a reasonable doubt before she could be found guilty.

If she pled guilty there would be no trial and the court would sentence her on her guilty plea after considering a presentence report.

She was charged with possession with intent to distribute in excess of 50

grams of cocaine base, that is, crack cocaine, and before she could be convicted the Government would have to prove beyond a reasonable doubt that on December 18, 2001, she knowingly and intentionally possessed more than 50 grams of crack cocaine, and did so with intent to distribute, and these were the elements the Government would have to prove before she could be convicted.

The maximum possible punishment she faced as a result of her guilty plea was imprisonment for not less than ten years and not more than life.

The Sentencing Commission Guidelines would apply to her case and she had discussed with her attorney how they might apply.

The court would not be able to determine her guideline sentence until a presentence report had been completed and had authority in some circumstances to impose a sentence more severe or less severe than called for by the guidelines.

If the sentence were more severe than she expected, she would still be bound by her plea and would have no right to withdraw it.

Other than discussing the guidelines, no one had made any prediction of what her sentence would be.

Following the colloquy with the defendant, the court directed the prosecutor to summarize the plea agreement and state the factual basis for the defendant's guilty plea. The recitation of the plea agreement included the provision that there was no agreement as to the sentence to be imposed, but was in the sole discretion of the court subject to the sentencing guidelines and the provision waiving all appeals and collateral attacks on the sentence and conviction. The statement of the factual basis for the plea included reference to specific quantities of drugs received in controlled buys or seized in searches from the defendant and co-conspirator Jamie L. Stewart, totaling more than 500 grams of cocaine base, and the defendant agreed that is what she did.

The court found there was a factual basis for Ms. Wells' guilty plea and that it was knowingly and voluntarily entered and accepted it.

Following entry of the guilty plea, a presentence report was prepared and provided counsel to review and file any objections by June 2, 2002. The Government had no objections and the defense counsel filed an objection July 5, 2002, to the use of the drug quantities related to the dismissed counts in calculating the defendant's sentence on the count of conviction. Counsel explained the delay in filing the objection was occasioned by the defendant's failure to respond to numerous requests to review the report at his office.

On May 1, 2002, Wells moved to withdraw her plea on the ground that she "didn't know that quantities of controlled substances detailed in the 5 dismissed counts would be used against her." On May 3, 2002, the court entered an opinion and order denying the motion.

On July 15, 2002, the Government filed a motion pursuant to U.S.S.G. § 5K1.1 for a downward departure for substantial assistance and on July 19, Wells appeared with her counsel before the court for sentencing. At the outset, the court noted the defendant's objection to the presentence report and that the Government had filed a motion for downward departure. The court inquired as to the defendant's position on her objection, and defense counsel withdrew the objection. The court adopted the presentence report which determined the defendant's base offense level to be 36 pursuant to § 2D1.1(a)(3)(c)(2) (At least 500 G but less than 1.5 KG of Cocaine Base). The presentence report adjusted the base offense level upward to 37 under the career offender provision of § 4B1.1 on the basis of her three prior felony drug convictions, and adjusted it downward 3 levels for acceptance of responsibility resulting in a total offense level of 34. The career offender adjustment mandated a criminal history category level VI which, with an offense level of 34, dictated a guideline sentence range of 262 to 327 months.

Neither counsel nor the defendant raised any objection during the sentencing hearing but confined their comments to a plea for a downward departure for substantial assistance and expressions of regret and repentance. In imposing sentence, the court departed downward on the basis of the Government's § 5K1.1 motion and sentenced the defendant to 131 months, one half of

the minimum sentence. The court advised her of her right to appeal the sentence and the appointment of counsel and waiver costs if she could not afford them. Judgment was entered July 22, 2002.

On December 2, 2002, petitioner filed a *pro se* motion to file an out of time appeal on the ground her attorney failed to file a timely notice of appeal and she believed she was sentenced on inaccurate and incomplete information in the presentence report. The court ruled that she would have to proceed by way of 28 U.S.C. § 2255 and denied the motion December 4, 2002.

On July 22, 2003, Wells filed the instant pro se motion, dated July 15, 2003, to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. For relief she "wants the sentence vacated and to be released or at least a substantial sentence reduction." Petitioner raises a myriad of objections, ranging from indictment to appeal.

Under the head of denial of effective assistance of counsel, Wells alleges that her retained counsel, Azki Shah, failed to:

(a) file a requested appeal,

(b) provide a copy of the presentence report,

(c) inform the defendant of the consequences of a guilty plea,

(d) pursue objections to the presentence report,

(e) (1) prepare an entrapment defense, and

   (2) inform the defendant of options of the Government's failure to prove the elements of the crime,

(f) object to the Government's breach of the plea agreement by using drug amounts involved in dismissed counts.

Under the claim, illegal, unlawful, or invalid sentence, she claims her sentence is invalid because:

(a) The Government violated the plea agreement by using the drug amounts related to

dismissed counts,

 (b)(1) the indictment was invalid for not charging the drug amounts used in sentencing, and

  (2) not charging her as a career offender,

(c) the court failed to inform her before the plea was entered that the drug offense could be enhanced for prior convictions and drug quantities in dismissed counts.

Under the heading of entrapment, Wells contends the Government used a confidential source to talk and bribe her into repeatedly selling drugs, thereby: (1) entrapping her into committing the offense, and (2) entrapping her into enhancing her sentence.

## DISCUSSION

The first obstacle to the relief she seeks is that Ms. Wells expressly waived all appeals and collateral attacks. As a general matter, "an informed and voluntary waiver of post-conviction relief is effective to bar such relief." *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994). Only claims of ineffective assistance of counsel directly affecting the validity of the waiver or the plea itself, survive a knowing and voluntary waiver. *See United States v. White*, 307 F.3d 336, 343 (5th Cir. 2002).

In *White*, the defendant was charged in one count with conspiring to distribute in excess of one kilogram of cocaine base and two counts of possession with intent to distribute 35 grams and 32.5 grams of cocaine base. He pled guilty to the conspiracy count and the Government dismissed the possession counts pursuant to a plea agreement. The plea agreement reserved White's right to appeal a sentence exceeding the statutory maximum, an upward departure, and the disparate treatment of cocaine and cocaine base, but otherwise expressly waived the right to appeal or challenge his sentence under 28 U.S.C. § 2255. The presentence report connected him with more than 1.5 kilograms of cocaine base which increased his base offense level. He objected at sentencing to the finding that he had sold more than 1.5 kilograms and also argued that the government had entrapped him into selling more drugs than he would have of his own volition. The court overruled

the objections and sentenced him accordingly. On direct appeal he challenged the sentencing disparity between cocaine and cocaine base, and also the district court's rejection of sentencing entrapment claim. The Fifth Circuit affirmed on the disparity claim and refused to address the entrapment issue because of his waiver of appeal.

Thereafter, White filed a *pro se* 2255 motion alleging the Government had failed to provide lab reports establishing the quantity of drugs and that his counsel rendered ineffective assistance by failing to raise the issue. The district court found the waiver language in the plea agreement was clear and unambiguous and White had knowingly and voluntarily waived his rights. Therefore, the court held the waivers were enforceable and denied the 2255 motion. White filed a notice of appeal and petition for a certificate of appealability asserting for the first time that his attorney was ineffective for allowing the Government to convict him under 21 U.S.C. § 841(b)(1)(A) while the plea agreement and factual resume allegedly required he be sentenced under § 841(b)(1)(B), and added that his waiver could not be knowing and voluntary under those circumstances. The Fifth Circuit construed the petition as challenging the validity of his waiver and granted him a Certificate of Appealability.

Having granted a Certificate of Appealability, the court had to determine whether White was contending ineffective assistance of counsel rendered his waiver and plea invalid or whether he was claiming he received ineffective assistance of counsel at the sentencing hearing. The court noted that while White argued at one point that because he was allegedly charged under one statute but sentenced under another, his waiver could not be knowingly made and counsel induced him to sign the plea agreement based on this assumption, the thrust of his argument was that counsel was ineffective at sentencing. Furthermore, the court observed that White's argument that he should have been sentenced under § 841(b)(1)(B) degenerated into "nonsense" when applied to his plea. White's argument was based on the fact that the dismissed counts cited (b)(1)(B) and in summarizing the indictment and factual resume the prosecutor mistakenly said the defendant was charged with

conspiracy in violation of § 841(a)(1) and (b)(1)(B). Neither the conspiracy count of the indictment nor the factual resume, which the defendant signed at the time of his plea agreement, and which he agreed with when read aloud, charged him with a violation of (b)(1)(B). He acknowledged in writing in the plea agreement and orally under oath that he was agreeing to be sentenced within a range of ten years to life. Finally, the sentence actually imposed was well within the statutory limits for even the smallest quantity of cocaine base and the district court was within its power to look at relevant conduct to assign the quantity of drugs within those statutory ranges. Thus, the court concluded that "even if White were arguing that this statutory confusion was somehow connected to the plea and rendered his waiver involuntary, that argument would be facially meritless and unsupported by the record." *Id.* at 340.

The court then considered whether the waiver barred review of his claim that counsel rendered ineffective assistance at the sentencing hearing. The court examined its own precedents and surveyed the law in other circuits and ruled that: "We will follow this wealth of authority and hold that an ineffective assistance of counsel argument survives a waiver of appeal only when the claimed assistance directly affected the validity of that waiver or the plea itself." *Id.* at 343. Accordingly, the court affirmed the district court's denial of White's 2255 motion.

In *United States v. Baymon*, 312 F.3d 725 (5th Cir. 2002), a cook in a federal corrections facility entered a conditional guilty plea to accepting bribes as a "public official" to smuggle contraband into the facility. The plea was pursuant to a written plea agreement incorporating a waiver provision virtually identical to that in Felicia Wells' plea agreement in this case. Despite the waiver of appeal, Baymon filed a direct appeal contending the factual basis was insufficient to establish he was a public official within the meaning of the statute under which he was convicted and the court erred in denying him a sentence reduction for acceptance of responsibility. Confronted with the waiver of appeal, the court noted that the Fifth Circuit had not considered what type of waiver agreement, if any, would be sufficient to waive "the right not to be prosecuted and imprisoned for conduct that does not violate the law," but found it unnecessary to address the issue

in this case because the factual basis was sufficient to support the plea. As to the sentencing claim, however, the court held that:

> In this case, the district court instructed the prosecutor to inform Baymon of any appeal waiver provision in the plea agreement. The Prosecutor responded that the agreement provided that "the defendant waive[d] his right to appeal the conviction and the sentence imposed in this case on any ground, and he also waives all post-conviction attacks upon his conviction or sentence" . . . . Baymon did not argue then, nor does he now, that the waiver provision was made unknowingly or involuntarily; therefore, he has waived his right to appeal the sentence.

*Id.* at 729.

Wells does not claim that her plea agreement waiver which she signed and which was repeated at the change of plea hearing before she entered her guilty plea was made unknowingly or involuntarily. She makes a general claim that counsel failed to advise her of the consequences of a guilty plea. But, if so, this deficiency was remedied several times before her plea. "The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged. As long as the defendant understood the length of time [she] might possibly receive, [she] was fully aware of the plea's consequences." *United States v. Rivera*, 898 F.2d 442, 447 (5th Cir. 1990) (internal quotation marks omitted). This information was imparted to petitioner in the Notice of Penalties attached to the indictment which she acknowledged receiving. It was set forth in the first provision of the plea agreement she signed. The court advised her of it at the change of plea hearing and she affirmed she understood it. Wells attempts to embellish her argument with an assertion that counsel told her she would receive a ten year sentence with a downward departure and her sentence would "probably be less than five years." This claim, however, is belied by her own testimony under oath at the change of plea hearing:

> Q    Mrs. Wells, other than discussing the Guidelines with you, has anyone made any prediction, prophecy, or promise to you as to what your sentence will be in this case?
> A    No, sir.

(Plea Tr. 12). *See United States v. Garcia*, 983 F.2d 625, 628 (5th Cir. 1993). In any case, "reliance

on the erroneous advice of counsel relative to the sentence likely to be imposed does not render a guilty plea unknowing or involuntarily. 'As long as the defendant understood the length of time he might possibly receive he was fully aware of his plea consequences.'" *United States v. Santa Lucia,* 991 F.2d 179, 180 (5th Cir. 1993).

Wells complains particularly that neither counsel nor the court advised her that drug quantities related to the dismissed counts could be used as relevant conduct in calculating her guideline sentence on the count of conviction or that her prior convictions would be used to enhance her sentence as a career offender. Furthermore, she contends, this constituted a breach of the plea agreement not to prosecute her on the dismissed charges.

"In the first place, consideration of relevant conduct in the selection of a defendant's sentence within the range of permissible punishment established by Congress for his offense of conviction is not the equivalent of prosecuting the defendant for an offense additional to his offense of conviction . . . Thus, if the government promises not to prosecute a defendant for certain offenses in exchange for a guilty plea to a different offense, the sentencing court may nevertheless consider the relevant but uncharged conduct as long as the punishment selected is within the statutory range for the offense of conviction." *United States v. McCleskey*, 9 F.3d 368, 377 (5th Cir. 1993) (internal quotation marks omitted), *cert. denied*, 511 U.S. 1042 (1994). In *United States v. Dees*, 125 F.3d 261 (5th Cir. 1997), *cert. denied*, 522 U.S. 1152 (1998), the defendant agreed to plead guilty and waive her right to appeal her sentence on a one-count information for conspiracy to commit bank fraud. She was sentenced on the basis of the entire loss attributed to the four year long conspiracy and filed a direct appeal contending she should be sentenced only for the losses that accrued during the eighteen months she actively participated in the scheme. The Fifth Circuit dismissed her appeal explaining that:

> As part of her plea agreement, Dees agreed not to appeal her sentence on any grounds. Dees now argues that this waiver of her right to an appeal was not informed and voluntary, as she had no idea that the district court would hold her accountable for the entire amount of loss. Dees was, however, informed of the maximum term

> of imprisonment to which she could be sentenced, and her actual sentence fell within that range. Accordingly, her plea was informed and voluntary . . . . So long as a plea is informed and voluntary, we will enforce a waiver of appeal.

*Id.* at 269.

Likewise, the Fifth Circuit has held that "a defendant had no due process right to be notified, before the district court accepted his guilty plea, that his sentence would be enhanced for recidivism pursuant to the sentencing guidelines . . . . 'Due process does not mandate . . . notice, advice, or a probable prediction of where, within the statutory range, the guideline sentence will fall.'" *United States v. Watson*, 988 F.2d 544, 553 (5th Cir. 1993), *cert. denied*, 510 U.S. 1048 (1994). In *United States v. Pearson*, 910 F.2d 221 (5th Cir. 1990), *cert. denied*, 498 U.S. 1093 (1991), the defendant pled pursuant to a plea agreement to one count of possession of cocaine with intent to distribute and the Government dismissed the second count. Before the defendant entered into the plea bargain, the defense attorney and the prosecutor discussed whether he would be considered a career offender under the sentencing guidelines. Based on information in a Texas Department of Public Safety Report the attorneys concluded the defendant was not a career offender. After acceptance of the plea, the probation office discovered an additional conviction which triggered career offender status and enhanced his sentence from an offense level of 12 to 32. He was sentenced to 240 months, the statutory maximum, and appealed contending that his guilty plea was involuntary because it was based on the expectation that he would not be sentenced as a career offender and he was not informed prior to entry of his plea of the applicability of the Guideline career offender enhancement. The Fifth Circuit affirmed the conviction and sentence saying:

> Due process requires that a guilty plea be a knowing and voluntary act; the defendant must be advised of and understand the consequences of the plea . . . . 'The consequences of a guilty plea, with respect to sentencing, mean only that the defendant must know the maximum prison term and fine for the offense charged. As long as [the defendant] understood the length of the time he might possibly receive, he was fully aware of his plea's consequences' . . . . The court informed Pearson prior to accepting his guilty plea that he faced a maximum prison term of 20 years. That turned out to be the sentence imposed. Pearson's plea was thus voluntary, and the

strictures of the due process clause as to this point were satisfied.

*Id.* at 223.

There is no direct claim and no basis for a claim that Wells' plea and waiver were not knowing and voluntary. She has, therefore, effectually waived any claim to post-conviction relief under 28 U.S.C. § 2255 and the claims asserted. Moreover, the express waiver aside, her individual claims are otherwise barred and/or without merit. "A voluntary and unconditional guilty plea has the effect of waiving all non-jurisdictional defects in the prior proceedings." *United States v. Wise*, 179 F.3d 184, 186 (5th Cir. 1999). Thus the complaint that counsel failed to prepare an entrapment defense is moot. "Entrapment, a defense on the merits, was waived by the guilty plea." *United States v. Sarmiento*, 786 F.2d 665, 668 (5th Cir. 1986).

The claim that counsel failed to pursue objections to the presentence report is meritless. Counsel filed objections to consideration of the drugs involved in the dismissed counts as relevant conduct in determining Wells' sentence on the count of conviction. This was the basis for her earlier motion to withdraw her plea, which was denied, and for her current claims of invalid indictment, uninformed plea, and breached plea agreement. The objection had no merit then or now and counsel was not ineffective for withdrawing it at sentencing. "Because [Wells'] sentence was proper, her counsel was not ineffective for not challenging imposition . . . at trial or on appeal." *United States v. Preston*, 209 F.3d 783, 785 (5th Cir. 2000). Equally without merit is the claim that counsel failed to file an appeal. Wells' "attorney cannot be considered deficient for failing to raise claims knowingly and voluntarily waived in the process of plea bargaining." *United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994).

Wells contends she could have been arrested anytime after the first small transaction but the Government continued to make undercover buys to entrap her into enhancing her sentence. "Sentencing enhancement or sentencing factor manipulation occurs when a defendant, although predisposed to commit a minor or lesser offense, is entrapped in committing a greater offense subject to greater punishment." *United States v. Washington*, 44 F.3d 1271, 1280 n. 28 (5th Cir. 1995), *cert.*

*denied*, 514 U.S. 1132 (1995). The Fifth Circuit "apparently has not expressly determined whether [it] accepted the concept of 'sentencing factor manipulation.'" *United States v. Tremelling*, 43 F.3d 148, 151 (5th Cir. 1995), *cert. denied*, 514 U.S. 1122 (1995). The other circuits are divided. See *United States v. Okey,* 47 F.3d 238, 239 nn. 2 & 4 (7th Cir. 1995). Courts receptive to the concept of sentencing entrapment as grounds for a downward departure, however, "decline to adopt a rule that, in effect could find 'sentencing manipulation' whenever the government, even though it has enough evidence to indict, opts instead to wait in favor of continuing its investigation." *United States v. Baker*, 63 F.3d 1478, 1500 (9th Cir. 1995).

> Such a rule "would unnecessarily and unfairly restrict the discretion and judgment of investigators and prosecutors" . . . . "Police . . . must be given leeway to probe the depth and extent of a criminal enterprise, to determine whether co-conspirators exist, and to trace . . . deeper into the distribution hierarchy". . . . Moreover, since the government bears the burden of proving its case beyond a reasonable doubt, it must be permitted to exercise its own judgment in determining at what point in an investigation enough evidence has been obtained.

*Ibid*.

Wells claims counsel was ineffective for failing to provide her a copy of the presentence report and review it with her, and the court failed to verify she had read and discussed it with counsel in accordance with Fed R. Crim. P. 32. This claim does not affect the validity of her preceding plea and waiver, but as distinct issue, it has a semblance of partial merit. "[T]his failure, if proven, would [meet] the first prong of the *Strickland* analysis." *United States v. Bartholomew*, 974 F.2d 38, 40 (5th Cir. 1992). To fulfill the requirements of *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant "must demonstrate (1) that his attorney's conduct fell below an objective standard of reasonable professional assistance and (2) but for counsel's errors, there is a reasonable probability that the result of the proceeding would have been different." *United States v. Bartholomew*, 974 F.2d 39, 41 (5th Cir. 1992).

Wells asserts that she did not receive a copy of the presentence report until four months after sentencing, and the only discussion she had about it with counsel was that he told her he had filed

some objections to it. "The scope of an attorney's duty," in such circumstances, "may be limited by a defendant's lack of cooperation." See *Randle v. Scott*, 43 F.3d 221, 225 (5th Cir. 1995), *cert. denied*, 515 U.S. 1108 (1995). Counsel cannot force the defendant to read and discuss the presentence report if she is irresponsible and uncooperative. The presentence report reflects that counsel's objection was filed late which, counsel explained, was because "Ms. Wells has failed to respond to our numerous letters to stop by this office so as to sign same, and to voice her objections – if any. We simply don't know why she has decided not to cooperate with this office." If she refused the opportunity to review and discuss the presentence report, she cannot fault counsel for failing to obtain her input. "In general, counsel is not ineffective for failing to discover evidence about which the defendant knows but withholds from counsel." *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997).

It is the second prong of the *Strickland*, test, however, that punctures her argument that she would have objected to the sentence enhancement for relevant conduct associated with the dismissed counts, and the "sub dividing of defendant's prior conviction" resulting in her classification as a career offender. As discussed above, her first would be objection has no basis in fact or law and is meritless. Her second objection to her criminal history category is nothing but a bald assertion that the presentence report is wrong, without proffer of any supporting evidence. "If no relevant affidavits or other evidence is submitted to rebut the information in the PSR, the district court is free to adopt the PSR findings without further inquiry or explanation . . . . The defendant bears the burden of demonstrating that the information in the PSR is materially untrue." *United States v. Glinsey*, 209 F.3d 386, 393 (5th cir. 2000), *cert. denied*, 531 U.S. 919 (2000).

Thus Wells has failed to demonstrate that there is any inaccuracy in the presentence report or that the outcome of the proceeding would have been different if she had read and discussed it with counsel. Consequently, counsel was not ineffective and the court's failure to address the point at sentencing was totally harmless. *See United States v. Bartholomew*, 974 F.2d 39, 42, 43 (5th Cir. 1992).

## CONCLUSION

Having carefully considered petitioner's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255, the court finds that petitioner has stated no grounds warranting relief.

An appropriate final judgment will issue.

This the 30th day of June, 2005.

/s/ Glen H. Davidson<br>
CHIEF JUDGE